UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| RYAN KLAASSEN, JAIME CARINI, D.J.B., by and though his next friend and father, DANIEL G. BAUMGARTNER, ASHLEE MORRIS, SETH CROWDER, MACEY POLICKA, MARGARET ROTH, and NATALIE SPERAZZA, <br><br> Plaintiffs, <br><br> vs. <br><br> TRUSTEES OF INDIANA UNIVERSITY, <br><br> Defendant. | CASE NO. 1:21-cv-00238 |

**TRUSTEES OF INDIANA UNIVERSITY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXPEDITE**

Plaintiffs seek to rapidly expedite briefing and resolution of a case challenging Indiana University's COVID-19 safety precautions for the fall 2021 semester. Plaintiffs admit that these policies were first announced at least as early as May 21, 2021,[1] and Plaintiffs' counsel first publicly threatened a lawsuit on May 27, 2021. Ex. 1 (Bopp Press Release). Plaintiffs filed their 54-page, 254-paragraph complaint on June 21, 2021, along with an oversized Motion for Preliminary Injunction and a Motion to Consolidate resolution of the preliminary injunction with a trial on the merits. D.E. 8-1, 10. IU received these filings electronically from Plaintiffs after hours on June 21, 2021. While IU understands that Plaintiffs believe their claims are time-sensitive, the schedule that Plaintiffs have proposed is not feasible for multiple reasons. IU respectfully opposes the Motion to Expedite.

---

[1]   *See* D.E. 1, ¶ 17; D.E. 1-2.

1

I.   **Background**

Plaintiffs are eight current[2] or incoming IU students[3] at IU's Indianapolis or Bloomington campuses; no Plaintiff is a student in Fort Wayne. *See* D.E. 1, ¶¶ 8-15. Each plaintiff purportedly objects to IU's COVID-19 safety plan, which, as relevant here, requires students who are not granted an exemption to be fully vaccinated against COVID-19 by the earlier of their return to campus (after August 1) or August 15 ("COVID-19 Vaccination Policy").[4] *See id.*, ¶ 19. The COVID-19 Vaccination Policy permits students to apply for full or temporary exemptions on a number of bases, including sincerely held religious objections, medical deferrals, and because students will be attending school only virtually. *See, e.g., id.*, ¶ 23.

Six of the Plaintiffs have already sought and received an exemption from IU's COVID-19 Vaccination Policy. *See id.*, ¶¶ 180 (Plaintiff Klassen), 182 (Plaintiff Carini), 196 (Plaintiff D.J.B.), 201 (Plaintiff Morris), 205 (Plaintiff Crowder), & 207 (Plaintiff Policka). In other words, under IU's policy, these six Plaintiffs do not have to receive the COVID-19 vaccine to return to campus for the fall 2021 semester. *See, e.g.*, D.E. 1-3 (summarizing opportunity to request an exemption from COVID-19 Vaccination Policy). The remaining two Plaintiffs—Plaintiffs Roth and Sperazza—have not requested an exemption. *See* D.E. 1, ¶¶ 213, 214-16. Plaintiffs seek an injunction of this requirement on the basis that it violates the Fourteenth Amendment and Indiana's "vaccine passport" law. D.E. 8-1 at 6.

---

[2]  Plaintiff Jaime Carini is not enrolled for the fall 2021 semester.
[3]  One plaintiff, who is a minor, is represented by his father. D.E. 1, ¶ 10.
[4]  Plaintiffs also describe IU's COVID-19 safety protocols regarding masking and COVID-19 testing. *See, e.g., id.*, ¶¶ 28-30. However, Plaintiffs' claims and their requested relief relate only to IU's "Mandate," as defined by Plaintiffs. *See id.*, ¶¶ 2, 222-252.

2

**II.     The Briefing Schedule Should Not be Expedited**

Given the breadth of the allegations and claims presented by Plaintiffs' voluminous complaint and oversized Motion for Preliminary Injunction, an extended period of time for IU to respond to the Motion would be appropriate. However, IU seeks only its prescribed time period under the local rules to respond. *See* N.D. Ind. L.R. 7-1(d)(3). Plaintiffs are free to shorten their reply timeline to close briefing more quickly, but Plaintiffs have not demonstrated any prejudice they will experience by having briefing conclude on July 13 consistent with the local rules.

**III.    Plaintiffs Have Not Made the Requisite Showing to Expedite Discovery**

To the extent Plaintiffs allege they will suffer irreparable harm without expedited discovery, they must meet a stringent test that requires more than Plaintiffs' mere "request." *See* D.E. 9 at 2-3. Specifically, Plaintiffs must show "(1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury that will result without expedited discovery is greater than the injury a party will suffer if the expedited relief is granted." *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 259 F.R.D. 385, 386 (E.D. Wis. 2009) (citing *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)). Plaintiffs have satisfied none of these factors.

*Irreparable harm*. Plaintiffs' only "showing" on this factor is a recitation that they will be irreparably harmed without expedited proceedings generally. D.E. 9 at 2. Beyond this, Plaintiffs "do[] not indicate an irreparable injury will result without expedited discovery." *Edgenet*, 259 F.R.D. at 387.

*Probability of success on the merits*. Plaintiffs make no argument in their Motion to Expedite about their likelihood of success on the merits. And this factor heavily weighs in IU's favor. As noted, six of the Plaintiffs have already received exemptions from the COVID-19

3

Vaccination Policy, and the remaining two have not even requested an exemption, so it is unclear that any of the Plaintiffs has the standing necessary to pursue the asserted claims. Even assuming standing, at least one court has rejected a challenge like Plaintiffs'. *See, e.g.*, *George v. Kankakee Community College*, No. 14–CV–2160, 2014 WL 6434152 at * (C.D. Ill. Nov. 17, 2014) (holding public college and its partner hospital did not violate Due Process Clause when hospital required mandatory vaccinations of paramedic students, even though college's enforcement of hospital policy prevented student from completing a required course); *see also, e.g.*, *Bridges v. Houston Methodist Hosp.*, No. CV H-21-1774, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021) (rejecting argument that policy requiring employee to receive COVID-19 vaccination to maintain employment was coercive because employee "can freely choose to accept or refuse a COVID-19 vaccine . . . [and] if she refuses, she will simply need to work somewhere else").

Plaintiffs' claim that IU's COVID-19 Vaccine Policy violates Indiana's "Vaccine Passport Law" is no more likely to succeed. As an initial matter, Indiana Code ch. 16-39-11 does not create a private right of action. Even if it did, IU respectfully disagrees with Attorney General Rokita that for purposes of this statute, the legislature clearly intended the statute to apply to state educational institutions like IU rather than simply "the state," as the plain language suggests. *Compare* D.E. 1-6 at 2-3 *with* Ind. Code § 16-39-11-5(a). Indeed, his opinion characterizes IU as an "arm of the state"—not the state itself. D.E. 1-6 at 2-3. By contrast, the legislature uses the terms "state educational institution," "political subdivision," and the like to refer to distinct entities like IU. *See, e.g.* Ind. Code § 21-40-3-1; *id.* § 21-34-4-1; *id.* § 16-34.5-1-2. Moreover, even if the Vaccine Passport Law is deemed to apply to IU, its COVID-19 Vaccine

Policy does not require documentation of vaccine status, only an attestation that students have been vaccinated. D.E. 1 ¶ 33.[5]

*Connection between discovery sought and avoiding alleged irreparable harm.* Plaintiffs make no argument about why expedited discovery is necessary—let alone critical—to avoiding the unspecified irreparable harm. *See* D.E. 9 at 2-4; *see also, e.g.*, *Bankers Life & Cas. Co. v. Soeurt*, No. 1:16-CV-00325-TAB-TWP, 2016 WL 9349025, at *2 (S.D. Ind. July 13, 2016) (denying request for expedited discovery because plaintiff identified no discovery "that would have made a difference in th[e] case").

In fact, Plaintiffs' insistence that they require a burdensome amount of discovery is in direct conflict with their contention that "The Resolution of this Case Turns on Purely Legal Issues." D.E. 10 at 2. If that is true, it is directly at odds with Plaintiffs' proposed voluminous discovery requests, which include *all* "records related to Indiana University's decision" to require COVID-19 vaccination and *all* "records regarding the implementation of that decision, including such documents in the Office of the General Counsel or Office of the President" along with *dozens* of other data points beginning in 2016. D.E. 9 at 2-3; D.E. 9-2; *see also, e.g.*, *Metalcraft of Mayville, Inc. v. Toro Co.*, No. 16-C-544, 2016 WL 8737776, at *1 (E.D. Wis. June 10, 2016) (rejecting request for expedited discovery where information sought was not necessary for briefing preliminary injunction motion). Plaintiffs also seek expedited discovery

---

[5]   In addition, Attorney General Rokita's opinion analyzes a *prior* version of IU's COVID-19 Vaccination Policy, which IU amended in response to the Attorney General's statement and other feedback it received. *See, e.g.*, Atkinson, Emma, IU Amends Vaccine Requirement, Will No Long Mandate Proof of COVID-19 Vaccine (pub. June 1, 2021), *available at*: https://www.wfyi.org/news/articles/iu-amends-vaccine-requirement-will-no-longer-mandate-proof-of-covid-19-vaccine.

from the Indiana State Department of Health ("ISDH") on those same dozens of categories of information along with annual summary reports for the last four years. D.E. 9-3.

Although Plaintiffs have not yet served discovery requests on IU or ISDH in this case, Plaintiffs believe that a response deadline of June 28, 2021— presumably, at most, three business days after the requests are received (if the Court allowed them to be served on June 23) is appropriate. In short, Plaintiffs should not be able to have it both ways. Either this case presents pure questions of law that can be swiftly resolved at the preliminary injunction stage, or this case requires substantial discovery in order for the Court to have the requisite evidence before it to render a decision.[6] At a minimum, the Court could urge Plaintiffs to narrow their discovery requests to information that they can demonstrate is specifically necessary to support their claims.

*Balancing of burdens*. Plaintiffs' motion also fails to address the burdens their proposed discovery will pose on IU (and ISDH). And, given that Plaintiffs identify no irreparable harm they allege will result absent the discovery, their motion certainly engages in no balancing of that unspecified harm as against the burden they are asking this Court to impose on IU, which is substantial. D.E. 9 at 2-3; D.E. 9-2 (requests to IU). For example, Plaintiffs specifically seek documents from the Office of the General Counsel. D.E. 9 at 2-3. This category alone will require substantial time to review and analyze for attorney-client privileged communications. Plaintiffs' data requests are no less burdensome. As just one example, Plaintiffs seek:

---

[6]   This inconsistency is also in tension with Plaintiffs' Motion to Consolidate, which insists that "all of the facts necessary to determine the merits of the complaint are, or will be, before the Court at the preliminary injunction hearing." D.E. 10 at 3. If, in fact, Plaintiffs need substantial discovery that cannot be completed prior to an injunction hearing, perhaps consolidation is inappropriate. IU reserves the right to respond separately to Plaintiffs' Motion to Consolidate.

> for the school years 2016-17, 2017-18, 2018-2019, 2019-2020, and 2020-2021, the total number of IU students on all campuses who were affected by any disease, injury or condition, the name and nature of each disease, injury or condition, the number of students who obtained any reported medical treatment or received medical treatment on campus for each disease, injury or condition, and the number of students who died as a result of each disease, injury or condition.

D.E. 9-2. Twelve of the fifteen categories follow this pattern, whereby Plaintiffs seek multiple data points over a period of multiple years. *Id.* The other three categories seek data specific to COVID-19 at IU during the last two school years. *Id.*

By contrast, six of the Plaintiffs have already obtained exemptions from IU's vaccination policy, so they are without a basis for alleging they will be harmed if IU's COVID-19 vaccination policy is not urgently enjoined. The remaining two Plaintiffs apparently have not requested an exemption from the vaccination policy, so they have an avenue other than an expedited injunction to avoid the purported irreparable harm they are alleging will befall them without entry of an injunction before August 1 or 15.

The other inefficiency in Plaintiffs' proposal is that it requests that IU produce discovery responses on the same day that it files its response brief. D.E. 9 at 3. In addition to this resulting in onerous burden on IU in the next six days, this process will result in Plaintiffs receiving discovery responses only prior to filing their reply brief—making it likely that IU will require a sur-reply to adequately address Plaintiffs' responsive arguments, thus further extending the briefing period. *See, e.g.*, *Edgenet*, 259 F.R.D. at 388 ("[C]ourts have an obligation to protect defendants from unfairly expedited discovery."). Moreover, there is uncertainty about whether ISDH, as a non-party, will timely comply with the proposed subpoena on Plaintiffs' requested timeline.

Even if the Court were to apply the more generous "good cause" standard—under which the Court considers "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made"—Plaintiffs have made no showing that the very significant burden they seek to impose on IU (and ISDH) is somehow outweighed by the information they hope to gain through their proposed discovery. *Suzhou Parsun Power Mach. Co. v. W. Imp. Mfg. Distribution Grp. Ltd.*, No. 10-C-398, 2010 WL 2925894, at *1 (E.D. Wis. July 20, 2010); *see also, e.g.*, *Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*, No. 1:17-CV-00949, 2017 WL 11573559, at *1 (S.D. Ind. May 11, 2017) ("Good cause can be found when the need for expedited discovery, in consideration with the administration of justice, outweighs the prejudice to the responding party."). As noted, Plaintiffs' proposed discovery is extensive and will impose a very significant burden on IU. Its apparent purpose—fact-gathering—contradicts Plaintiffs' position that this dispute turns on legal issues, and it could not possibly come any further ahead of the typical discovery process, with Plaintiffs seeking to serve it essentially alongside their Complaint and, as they note, in advance of initial disclosure requirements, meet-and-confer requirements, and non-party discovery notice requirements, all of which they seek to be waived. *See* D.E. 9 at 4. Providing no justification for the extensive expedited discovery they seek, Plaintiffs wholly fail to satisfy their burden.

IU respectfully requests that Plaintiffs' Motion to Expedite be denied.

Respectfully Submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

/s/ *Anne K. Ricchiuto*
Anne K. Ricchiuto (#25760-49)
Stephanie L. Gutwein (#31234-49)
300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: 317-237-0300
Fax: 317-237-1000
anne.ricchiuto@faegredrinker.com
stephanie.gutwein@faegredrinker.com

*Attorneys for Trustees of Indiana University*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2021 a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

James Bopp, Jr.
Richard E. Coleson
Courtney Milbank
Melena S. Siebert
THE BOPP LAW FIRM
1 South 6th Street
Terre Haute, Indiana 47807

/s/ *Anne K. Ricchiuto*

9