**United States District Court**
**Northern District of Indiana**

| | |
|---|---|
| **Ryan Klaassen, Jaime Carini, D.J.B.**, by and though his next friend and father, Daniel G. Baumgartner**, Ashlee Morris, Seth Crowder, Macey Policka, Margaret Roth,** and **Natalie Sperazza**, | **Civ. No. 1:21-cv-238-DRL-SLC** |
| *Plaintiffs*, | **Reply in Support of Plaintiffs' Motion to Expedite** |
| *v.* | |
| **The Trustees of Indiana University**, *Defendant*. | |

## Reply in Support of Plaintiffs' Motion to Expedite

On June 21, 2021, Plaintiffs Ryan Klaassen, Jaime Carini, D.J.B., by and through his next friend and father, Daniel G. Baumgartner, Ashlee Morris, Seth Crowder, Macey Policka, Margaret Roth, and Natalie Sperazza filed a Motion to Expedite. On June 22, 2021, Defendant filed its Response. Plaintiffs now timely reply.

For the reasons herein, expedition of the case and expedited discovery is warranted and necessary.

### I. Facts

This case is about Indiana University ("IU") mandating that students receive the COVID vaccine, placing extra requirements on students who receive a religious or medical exemption to IU's Mandate, and requiring students to report their vaccination status, in violation of Plaintiffs' Fourteenth Amendment rights and Indiana's Vaccine Passport Law (Ind. Code § 16-39-11-5).

On May 21, 2021, IU announced that there would be a requirement to receive a COVID-19

-1-

("**COVID**") vaccine for the fall 2021 semester ("**IU's Mandate**"). Compl., ECF 1, ¶ 17.

In order to comply with IU's Mandate, students must receive one of the available COVID vaccines by either August 15 or when they return to campus after August 1, whichever is earlier. *Id*. at ¶ 19. IU has further suggested that students receive their first dose by July 1, 2021, in order to comply with IU's Mandate. *Id*. at ¶ 20. If they do not, students will have their class registration canceled, their university-issued IDs, known as "Crimson Cards," terminated, and will be restricted from any on-campus activity. *Id*. at ¶ 21.

A very limited number of exemptions are available; however, all students who are granted an exemption must participate in mitigation testing twice a week, a mandatory quarantine if exposed to someone who tests positive for COVID, wear mandatory face masks in public spaces, and a mandatory return to their home address if the campus has a serious outbreak of the virus ("**Extra Requirements**"). *Id*. at ¶ 29. There are no exemptions from these Extra Requirements. *Id*. at ¶¶ 30-32. If a person with an exemption is found not wearing a face mask or does not participate in the mitigation testing, they face "disciplinary action up to and including dismissal or termination from the university." *Id*. at ¶¶ 32.

Students are also required to use "IU's COVID-19 vaccine report form to attest that they are vaccinated and report all doses of [the] vaccine. *Id*. at ¶ 33. IU suggests that this be done after each dose. *Id*.

Defendant did not provide students or the general public with information regarding how it came to its decision to adopt and implement IU's Mandate, particularly in light of the fact that COVID is being brought under control, and all other federal, state, and local governments are lifting their restrictions. *Id*. at ¶¶ 69-94.

**Mot. to Expedite Reply**                    -2-

Plaintiffs include students (all of whom plan to attend IU this fall[1]) who object to IU's Mandate. Plaintiffs fall into three classes: (1) Plaintiffs who object generally to the Mandate and Extra Requirements, (2) Plaintiffs who have been granted a religious exemption, but have a religious objection to the Extra Requirements, and (3) Plaintiffs who should qualify for a medical exemption but are unable to, given the extremely limited criteria.

## II. Expedited briefing is warranted.

Plaintiffs have requested expedited briefing, given that all students are required to comply with IU's Mandate by August 15, 2021, or August 1, 2021, if they return to campus early. This tight time-line imposed by Defendant, makes the timing of this case of the upmost importance.

Defendant suggests that briefing can be concluded by July 13, 2021, under the local rules, and argue that this is sufficient. Defs. Mot. to Exped. Resp., ECF 15, p. 3. However, Plaintiffs have sought expedition in order to give this Court reasonable time to review briefing, have a hearing, and issue a decision before Plaintiffs are further harmed. Defendant's suggested time-line gives this Court virtually no time to issue a decision prior to the deadline of IU's Mandate.

It appears that Defendant would rather delay briefing for its administrative convenience, rather than allow this Court the maximum amount of time to reach its decision. With "1,300+ attorneys, consultants and professionals"[2] at their firm, Defendant's counsel should be able to comply with an expedited time-line.

---

[1] Defendant says Plaintiff Carini "is not enrolled for the fall 2021 semester." Defs. Mot. to Exped. Resp., ECF 15, p. 2, fn 2. Miss Carini is an IU student, she has simply not yet registered for her fall classes. IU charges a fee for any changes to students' class schedules. So as a standard practice, Miss Carini waits until August to register for her classes, when she can be sure of which classes she intends to take and can avoid any such fees. Miss Carini has secured three fellowships for this year and will be continuing her education at IU.

[2] *See*, Faegre Drinker, *Professionals*, https://www.faegredrinker.com/en/professionals?.

**Mot. to Expedite Reply**                    -3-

Moreover, the tight time-line is due to IU's delay in announcing it's Mandate. While the pandemic has been going on since March 2020,[3] Defendant waited until the end of May to announce IU's Mandate, giving students just over a month to comply with their "suggestion" that students receive their first dose by July 1, 2021, and less than three months to comply with the Vaccine requirement generally. This rushed time-line is not the fault of Plaintiffs, who are simply students defending their rights and their health. The rushed time-line was caused by Defendant who chose to announce IU's Mandate at the last possible minute, thereby giving students virtually no time to challenge it. Plaintiffs should not be punished by Defendant's delay.

As a result, Plaintiffs have sought an expedited time-line in order to vindicate their rights before IU's deadline.

### III. Expedited discovery is warranted.

As a preliminary matter, Defendant argues that discovery is unnecessary because resolution of the case turns on purely legal issues. Defs. Mot. to Exped. Resp., ECF 15, p. 5. Plaintiffs have never said that the facts are not relevant to the case. While Plaintiffs think that the issues to be decided are questions of law, this does not mean that the facts are irrelevant. Instead, Plaintiffs argue that none of the relevant material facts are or will be in dispute. Indeed, Plaintiffs seek discovery to provide to the Court all relevant facts so that the Court may review those facts and use them as the basis to apply the law.

Expedited discovery is even more relevant here where Plaintiffs' Motion for Preliminary Injunction essentially decides the case. Without the preliminary injunction, Plaintiffs will either

---

[3] Plaintiffs' argue that the pandemic is virtually over and evidence suggests this is true. *See* Compl., ECF 1, ¶¶ 111-148.

**Mot. to Expedite Reply**                    -4-

be expelled, forced to take a vaccine they are opposed to, or have to comply with onerous Extra Requirements. All this harm will occur no later than August 15, 2021. This is irreparable harm.

Accordingly, both Plaintiffs and this Court immediately need the material facts relevant to IU's Mandate, including but not limited to their reasons for adopting and implementing the mandate and to see if there was a sufficient justification for doing so. Plaintiffs' discovery requests are both relevant and necessary.

Plaintiffs' request for expedited discovery should be considered under the "good cause" or "reasonableness" standard used in this district, and a *"pending request for a preliminary injunction is a typical ground that satisfies a good cause standard." See Orlando v. CFS Bancorp, Inc.*, No. 2:13-CV-261 JD, 2013 WL 12329547, at *1, *2 (N.D. Ind. Oct. 10, 2013) (emphasis added). Defendant urges this Court to use the "more stringent" standard adopted in *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, which "mirrors the standard required for obtaining a preliminary injunction." 259 F.R.D. 385, 386 (E.D. Wis. 2009). The *Edgenet* Court noted that courts are split on the issue of which standard to apply to a motion to expedite. But the procedural posture relevant in *Edgenet* is distinguishable from *Orlando* and shows why *Orlando* is the proper standard to use here.

*Edgenet* had not sought a preliminary injunction or a temporary restraining order against Home Depot and also had agreed to an extension of time for the defendants to file an answer to the complaint. *Id.* at 387. In *Orlando*, the moving party had filed for a preliminary injunction and a motion for expedited proceedings and discovery. *Orlando*, 2013 WL 12329547, at *1. The factors used to determine whether expedited discovery is warranted under the *Orlando* standard include:

**Mot. to Expedite Reply**                     -5-

(1) whether a preliminary injunction is pending;
(2) the breadth of the discovery requests;
(3) the purpose for requesting the expedited discovery;
(4) the burden on the defendants to comply with the requests; and
(5) how far in advance of the typical discovery process the request was made.

*Id.* As the *Orlando* Court noted, "the reasonableness standard [typically] allows expedited discovery when the need for the expedited discovery outweighs the prejudice to the responding party, based upon the entirety of the record and reasonableness of the request in light of the surrounding circumstances." *Id.* (citing *Share Corp. v. Momar, Inc.*, No. 10-CV-109, 2010 WL 724321, at *2 (E.D. Wis. Feb. 26, 2010)).

Under the totality of the circumstances, this Court should grant Plaintiffs' Motion to Expedite. Of primary importance when considering whether "good cause" has been shown is whether the moving party has sought a preliminary injunction. When the moving party has done so, as Plaintiffs have here, that typically satisfies the good cause standard.  In this way, the Plaintiffs' case is much closer to *Orlando* than to *Edgenet*. Here, Plaintiffs have simultaneously asked for expedited briefing *and* concurrently filed a Motion for Preliminary Injunction (ECF. 7, 8-1). And of course, Plaintiffs have not agreed to any extension in answering the complaint. The tailored breadth of the discovery requesting material facts, the critical purpose of the requests in light of the importance of the rights at issue, the minimal burden on Defendant in complying, and the tight time-line necessitated by IU's Mandate all justify expedited discovery under the "good cause" standard. Even if Plaintiffs are required to show the *Edgenet* factors, which the Seventh Circuit does not require here, Plaintiffs have done so.

*Irreparable Harm:* Plaintiffs have shown that they have irreparable harm. Plaintiffs will be forced to have an Emergency Use Authorization vaccine they do not want injected into their

**Mot. to Expedite Reply**                    -6-

bodies or will suffer the "strong consequence" of virtual expulsion from IU. PI Mem., ECF 8-1, pp. 36-37. Likewise, Plaintiffs who choose to get the vaccine, but who do not complete IU's vaccination form will also suffer these severe consequences because IU will not consider them vaccinated or exempt if they do not complete this form. *Id.* at 37. Plaintiffs have irreparable harm.

*Probability of Success on the Merits:* Plaintiffs have shown that they are likely to succeed on the merits. *Id.* at 20-36. While public health, under certain circumstances, can be considered a compelling state interest, that situation is not present now with college students, and IU has not narrowly tailored its Mandate using the least restrictive means available, so it fails strict scrutiny, which is the proper constitutional standard this Court should use. In the alternative, IU's Mandate also fails under either *Jacobson's* exception or modern rational basis scrutiny. Therefore, IU's Mandate is unconstitutional under the Fourteenth Amendment.

Likewise, Plaintiffs will likely succeed on the merits of their state claim that IU's Mandate violates the Vaccine Passport Law. If a student doesn't provide IU with his or her COVID immunization status, IU virtually expels that student. Virtual expulsion from school for refusing to document COVID immunization status is a "negative consequence" that directly violates the Vaccine Passport Law.

*Connection between discovery sought and irreparable harm:* The discovery sought is significantly related to avoidance of Plaintiffs' irreparable harm. First, Plaintiffs seek documents that explain how and why IU came to it's decision to mandate all students, staff, and faculty receive a COVID vaccination before the fall 2021 semester.[4] The importance of these documents

---

[4] This was first requested of Defendant through a public records request on May 27, 2021,

cannot be understated, as they are relevant to explaining how and why IU decided to mandate

vaccinations. Critically, these documents will explain how a public university, an arm of the

state, decided on a final action that irreparably harms Plaintiffs' Fourteenth Amendment rights.

This Court is asked to evaluate the justifications for IU's Mandate and the best source for those

justifications are the very documents that lead to IU's decision, which are the documents

Plaintiffs have requested and IU wants to keep secret.

Plaintiffs also seek documents regarding the statistics and data on the effects that COVID

and its vaccines have had on the student population and other data compilations reflecting health

and safety issues that affect IU students.[5] It is important to note that Plaintiffs are not seeking *all*

documents related to COVID or the other health and safety issues. Plaintiffs are only seeking

documents that accumulate the statistics for these categories. The importance of this second

request is to reveal the context and scope of impact the COVID virus has had on the IU student

body in comparison with other common student health issues. This is important to establish the

context surrounding IU's vaccination mandate.

Finally, Plaintiffs seek from the Indiana State Department of Health ("**ISDH**") similar

statistics and data as requested from IU. ISDH collects and maintains Annual Summary Reports

from each state educational institution. As above, Plaintiffs are not seeking *all* documents related

to COVID or the other health and safety issues. Instead, Plaintiffs only seek documents that

accumulate the statistics for these categories. The relevance of this request is to reveal the

---

so Defendant has been aware of such request for almost a month.

[5] This was first requested of Defendant through a public records request on June 1, 2021, so Defendant has been aware of such request for more than three weeks.

**Mot. to Expedite Reply**                    -8-

context and scope of impact the COVID virus has had on the IU student body in comparison with other common student health issues.

*Balancing of burdens:* Plaintiffs' burdens are significant violations of their constitutional rights, which the discovery requested will help show. On the other hand, Defendant's burden is minimal, if there is any burden at all. Defendant has had Plaintiffs' document requests for several weeks and should have already been collecting said documents to comply with their public records request. So there is no reason that Defendant should be unable to comply with an expedited time-line. There is no other harm to Defendant.

Moreover, while Defendant attempts to categorize Plaintiffs' request as voluminous and exhaustive, Plaintiffs only seek documents related to the decision to implement IU's Mandate and documents that accumulate the statistics for the requested categories.

As shown, Plaintiffs' discovery requests are reasonable, relevant, and necessary. All material facts must be presented to the Court, so that the Court may make an informed application of the law to the facts and so Plaintiffs' constitutional rights may be vindicated prior to August 15, 2021.

## Conclusion

For the reasons herein, expedited briefing and expedited discovery is both warranted and necessary.

Dated: June 23, 2021                          Respectfully Submitted,

_/s/ James Bopp, Jr._____
James Bopp, Jr., Ind. Bar No. 2838-84
Richard E. Coleson, Ind. Bar No. 11527-70
Courtney Milbank, Ind. Bar No. 32178-29
Melena S. Siebert, Ind. Bar No. 35061-15
THE BOPP LAW FIRM
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
jboppjr@aol.com
rcoleson@bopplaw.com
cmilbank@bopplaw.com
msiebert@bopplaw.com
_Counsel for Plaintiffs_

**Mot. to Expedite Reply**              -10-

**Certificate of Service**

I hereby certify that a copy of the foregoing document was served on the following counsel

of record in this matter on June 23, 2021, via the Court's electronic filing system.

Anne K. Ricchiuto – anne.ricchiuto@faegredrinker.com
Stephanie Gutwein – stephanie.gutwein@faegredrinker.com

/s/ James Bopp, Jr._____

**Mot. to Expedite Reply**       -11-